IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NORTH AMERICAN BUSHMAN, INC., et al., | CIVIL ACTION NO. **3:CV-02-0492** |
| Plaintiffs | Magistrate Judge Blewitt |
| v. | |
| JAMES SAARI, et al., | |
| Defendants | |

## **MEMORANDUM AND ORDER**

### **I. Background.**

Plaintiffs, North American Bushman, Inc. ("NAB"), David Domiano, and Greg Allen, originally filed this action on February 15, 2002, in the Court of Common Pleas of Lackawanna County against Defendants James Saari, Nancy Saari, Bushland Adventures, and John Doe Defendants 1 through 5. On March 27, 2002, Defendants filed a Notice of Removal of this action to this Court pursuant to 28 U.S.C. § 1441, since the Plaintiffs were Pennsylvania residents and all named Defendants were Ohio residents. (Doc. 1).

Plaintiffs' Complaint contained five (5) counts, to wit:

Count I:   Breach of Statutory Fiduciary Duty as a Director

Count II:   Breach of Statutory Fiduciary Duty as an Officer

Count III:   Unfair Competition - Disparagement

Count IV:   Unfair Competition, Use of Trade Secrets and Confidential Information

Count V:   Interference with Contractual and Business Relationships - WEDC

(Doc. 1).

This Court had diversity jurisdiction over this action, and it was governed by Pennsylvania law. See Moore v. Kulicke & Soffa Industries, Inc., 318 F.3d 561, 563 (3d Cir. 2003).

On March 27, 2002, Defendants filed their Answer to the Complaint, and Defendant James Saari filed Counterclaims against the Plaintiffs. (Doc. 4). The Plaintiffs answered the Counterclaims of Defendant Saari on April 19, 2002. (Doc. 9).

The parties consented to proceed before the undersigned pursuant to 28 U.S.C. § 636(c). (Doc. 18).

The Defendants moved for summary judgment as to all claims on February 24, 2003. (Doc. 38). The Plaintiffs filed a Cross-Motion for Summary Judgment with respect to Defendant James Saari's Counterclaims. (Doc. 41). On August 6, 2003, the Court conducted oral argument regarding the cross-Summary Judgment Motions.

On September 26, 2003, the Court issued the following Order (Doc. 69):

IT IS HEREBY ORDERED THAT:

    1. Defendants' Summary Judgment Motion (Doc. 38) is GRANTED in part and DENIED in part.
    2. It is GRANTED with respect to Counts 3 through 9, 11, and 13 of Plaintiff's Complaint.
    3. It is DENIED with respect to Counts 1 and 2 of Plaintiff's Complaint.
    4. JUDGMENT is entered in favor of Defendants and against Plaintiffs with respect to Counts 3 through 9, 11, and 13 of Plaintiff's Complaint.
    5. Plaintiff's Motion for Summary Judgment (Doc. 41) is DENIED with respect to Defendants' two remaining Counterclaims, Counts 1 and 3.
    6. Defendants' request for summary judgment with respect to Count 3 of their Counterclaim is DENIED.
    7. Nancy Saari is DISMISSED as a party Defendant.
    8. Greg Allen is DISMISSED as a party Plaintiff, but he remains a Counterclaim Defendant.

This case, with respect to the remaining parties and the remaining claims and counterclaims, was then set for trial on February 2, 2004. (Doc. 74). Trial was later continued generally. (Doc. 87). On February 18, 2004, Plaintiffs and Defendants filed a Mutual Settlement Agreement and Release ("MSAR") dated January 16, 2004, with an attached Stipulation for Dismissal and Judgment Entry ("SDJE"). (Doc. 89 and Ex. A). The MSAR was incorporated by reference and made part of the Stipulation for Dismissal signed by the Court. The Court executed the Stipulation for Dismissal, and it was filed on February 18, 2004. (*Id.*). This case was then closed.

During the time period from February 18, 2004 through August 6, 2007, there was no activity in this case, and the case remained closed. On August 7, 2007, Plaintiff David Domiano, in his personal capacity, filed a Motion for Contempt and for Sanctions solely against Defendant Saari for alleged willful violations of the MSAR. Plaintiff claimed that Defendant Saari provided and published to third parties certain information and copies of documents which were protected from disclosure under the MSAR, and disclosed documents that were required to be kept confidential. **(Doc. 93).** After hearing oral argument, the Court issued a Memorandum and Order on November 28, 2007, and denied Plaintiff's Motion for Contempt and Sanctions as against Defendant Saari. (Doc. 117).

This case was again closed and remained closed until October 27, 2008, when Defendants Saari and Bushland Adventures, Inc., jointly filed a Motion for Contempt against Plaintiff Domiano. **(Doc. 118).** Defendants' Motion was briefed, and the Court set oral argument for January 7, 2009. (Docs. 119-123). Exhibits were filed by both Defendants and Plaintiff, including the Affidavit of Defendant Saari. (Doc. 119, Ex. B).

3

Pursuant to the Court's October 23, 2007 Order entered in this case with respect to Plaintiff's referenced Contempt Motion, the Court again determines that it has jurisdiction over the Defendants' presently pending Motion for Contempt (See Doc. 104), since the February 18, 2004 Stipulation for Dismissal and Judgment Entry (Doc. 89) specifically provided that the MSAR and its terms were incorporated by reference and made a part of it. See *U.S.A. Skill Construction Co. v. Ins. Co. of North America*, 1999 WL 305514, * 3 (E.D. Pa.), citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994), in which held that "[e]nforcement of the settlement agreement, [ ] whether through award of damages or decree of specific performance, is more than just a continuation or removal of the dismissed suit, and hence requires its own basis for jurisdiction." See also *Williams v. PA Board of Probation and Parole*, 160 Fed.Appx. 212, 214-215 (3d Cir. 2005) (Non-Precedential) and *Marwood v. Elizabeth Forward Sch. Dist.*, 93 Fed.Appx. 333, 335 (3d Cir. 2004); *Nelson v. PA*, 125 Fed. Appx. 380, 381-382 (3d Cir. 2000) (Non-precedential); *Bridges v. BOP*, 2006 WL 3484335, * 2 (M.D. Pa. 2006).

As stated, the Court scheduled the oral argument regarding Defendants' Motion for Contempt for January 7, 2009 at 10:00 a.m. (Doc. 122). On January 2, 2009, Defendants filed their Exhibit List with Exhibits. (Doc. 123). On January 7, 2009, the Court held oral argument, on the record, with respect to Defendants' Motion for Contempt against Plaintiff Domiano. (Doc. 124). At oral argument, both parties referenced their exhibits which they had previously filed with the Court.

Following oral argument, the Court stated that it would hold Defendants' Motion in abeyance until a conference call between counsel was held with the Court on January 13, 2009,

in order to discuss a possible resolution of Defendants' Motion. The Court conducted the January 13, 2009, conference call, and a second conference call was held on January 20, 2009. (Docs. 127 and 129). Defendants' Motion could not be resolved by agreement of the parties, and the Court will now decide the Motion.

As discussed below, based on the filings of the parties, their exhibits as well as oral argument, the Court does not find Defendants have sufficiently shown that Plaintiff Domiano breached the MSAR. Thus, the Court will deny Defendants' Motion for Contempt against Plaintiff Domiano. (Doc. 118).

## II. Discussion.

As mentioned, the Court finds that it retained jurisdiction over Defendants' present Motion. Defendants seek enforcement of the MSAR based on Plaintiff Domiano's alleged breach of it. Defendants filed a Motion to hold Plaintiff Domiano in contempt for allegedly violating the MSAR, and Defendants seek sanctions against Plaintiff. (Doc. 118). The Court can exercise its contempt powers to enforce a court order, like we have in our case, that approved of a settlement agreement whose terms were incorporated by reference in that order. See, e.g. *Enprotech Corp. v. Renda*, 983 F. 2d 17, 21 (3d Cir. 1993). Thus, Defendants' Motion invoking the contempt powers of this Court based on Plaintiff's alleged breach of the MSAR is the proper vehicle to raise their claim.

Paragraph 1.(b) of the MSAR provided as follows:

> (b) Plaintiffs, directly or indirectly through any persons or entities with which they are or may be associated, hereby agree not to utilize, in any manner, style or color (including brochures), any Trademarks and/or Copyrights of the Defendants, including, but not limited to, the following:

       Bushland Adventures

       bushlandadventures.com

       bushlandadventuresinc.com

       "Let the Primitive Take Hold"

(Doc. 89, MSAR, p. 2, ¶ 1. (b) and Doc. 118, Ex. A).

Defendants claim that Plaintiff breached ¶ 1.(d) of the MSAR which provided, in part, as follows:

      1. (d)   Plaintiffs further agree not to use, and in addition, to offer up or destroy, any material that includes, but is not limited to, the names, photos, images, embroideries, of likeness of [Defendant ] James Saari and any of the a above named trade names and trademarks of Defendants.

(Doc. 89, MSAR, p. 3, ¶ 1. (d) and Doc. 118, Ex. A).

   Paragraph 1.(e) of the MSAR provides:

      (e)   This Agreement is specifically meant to include materials that are in current use by either party as of the date hereof, except as provided for above, and is not a waiver of any rights against future violations, actions or inaction, or any alleged breach of this Settlement Agreement and Mutual Release.  Nothing in this Settlement Agreement shall be interpreted to limit the parties' future protection under the statutes and law governing the use of trademarks, trade names and/or copyrights.

(Doc. 89, MSAR, p. 3, ¶ 1. (e) and Doc. 118, Ex. A).

The stated intent of the MSAR was for all parties to "fully release and forever discharge each other from all legal obligations, claims or causes of action related to the [above captioned] litigation." (Doc. 89, MSAR, p. 1, and Doc. 118, Ex. A).

Defendants contend that Plaintiff maintains various websites and that he has been specifically referencing Defendant Saari and Defendant Bushland Adventures, Inc., by name and

6

publishing photos of Saari on his websites, in violation of the MSAR.[1]  Defendants argue that Plaintiff is using his websites to harm and injure Defendants by transmitting false and derogatory information about them and with the intent to cause them damage.

Defendants request the Court to find Plaintiff in contempt of the MSAR, to impose sanctions against him, and to enjoin him from using names, photos, images, and likeness of Defendants in any manner, including on his websites.

The Court concurs with Plaintiff (Doc. 120, pp. 9-10) that the conduct Defendants allege against him in their Motion is not encompassed by any provision of the MSAR, and in particular, the above quoted provisions.  The MSAR simply does not prohibit Plaintiff from ever referring to Defendants in any manner.  The Court does not agree with the broad construction Defendants would have the Court read into the MSAR.  Just because Defendants' names are referenced in the open forums on Plaintiff's websites does not show that Plaintiff violated any provision of the MSAR.

During oral argument, Defendants conceded that, while Plaintiff's websites contain open forum discussions about Defendants' business and their fishing trips to Canada, Plaintiff is not using the trade names of Defendants.

Further, the Court does not find that the conduct which Defendants attribute to Plaintiff in their Motion is in violation of the MSAR.  Nor does the Court find that Defendants proved by any evidence that Plaintiff is responsible for posting the comments about Defendants on his websites in the open forum sections of them.  While Defendants argued that they suspected Plaintiff of

---

[1]The websites are listed at Doc. 118, p. 2, ¶ 3., and Doc. 119, Ex. B, ¶ 5.  Thus, the Court does not list them herein.

posting the comments about them on his websites, they offered no evidence to substantiate their mere suspicions. Defendant Saari's Affidavit (Doc. 119, Ex. B), as Plaintiff states, does not constitute admissible evidence to show that Plaintiff was responsible for posting the negative comments about Defendants on his websites or that Defendants suffered any damages as a result of any conduct that can be attributable to Plaintiff. Just because Plaintiff controls his websites does not prove that he posted the comments about Defendants in the open forums contained on the websites, and does not prove that Plaintiff is responsible for the references about Defendants on the websites. The Court concludes that the negative material about Defendants has not been proven to be attributable to Plaintiff and that these materials are messages from unknown sources contained in the open forums of Plaintiff's websites.

Additionally, the MSAR, as stated above, only prohibited Plaintiff from not utilizing in any manner the trademarks or copyrights of Defendants. (Doc. 118, Ex. A). The Court finds insufficient evidence that Plaintiff has used any materials under ¶ 1.(e) of MSAR as defined in ¶ 1. (d) of MSAR. Ths Court also finds that the MSAR sought to prevent Plaintiff and Defendants from using the promotional materials they had used when they were in business together. There is no claim that Plaintiff was using any of the stated promotional materials on his websites.

The Court agrees with Plaintiff that the MSAR did not preclude Plaintiff and Defendants from using each other's names and that it did not preclude the Plaintiff and Defendants from referring to the other party in any context whatsoever. The stated intent of the MSAR was to release the parties from the claims related to the above captioned litigation. In fact, it is undisputed that Plaintiff is no longer in business competition with Defendants. (Doc. 121, p. 7). There is no claim

that Plaintiff is intentionally using Defendants' names for purposes of commercial competition. Thus, there has been no showing that Plaintiff was using Defendants' names in order to compete with Defendants or to divert potential customers of Defendants to his business.

Moreover, the Court finds that Defendants have offered no evidence to show that they have been damaged or harmed in any manner, as alleged in their Motion, by the comments posted in the open forums on Plaintiff's websites. The Court finds Defendant Saari's averments in his Affidavit as to Defendants' damages to be completely speculative and without any proof. In fact, the Court specifically asked counsel for Defendants at oral argument what Defendants' evidence was regarding their alleged damages, and counsel submitted no evidence on this issue. The Court agrees with Plaintiff and concludes that there is no evidence that Defendants' business is being affected by any conduct attributable to Plaintiff on his websites. Defendants offered no evidence to show that they have lost any customers or potential customers and business profit as a result of any conduct attributable to Plaintiff on his websites. Defendants merely speculate that due to the negative comments posted about them on Plaintiff's websites, they have lost business.

As stated, even if Defendants had offered evidence as to their damages, and they did not, Defendants have failed to show that Plaintiff was the one who posted the comments in the open forums on his websites. The Court does not accept Defendants' unsupported contention in their Reply Brief that Plaintiff "is responsible for comments posted on his website to the extent that he permits the posting of such comments." (Doc. 121, p. 7). Rather, the Court agrees with Plaintiff, based on the evidence presented, that he cannot be held responsible for negative comments about Defendants that are posted in the open forum discussions (or "blogs") contained on his websites.

Also, the Court finds that there is no evidence that Plaintiff is cutting the discussion board comments about Defendants from other websites and posting them on his websites. (See Doc. 123, Ex. H). Defendants conceded at oral argument that they did not have any evidence that Plaintiff was responsible for this cutting and pasting. Further, Defendants have not shown that Plaintiff posted the photo of Defendant Saari on one of his websites during October 2008.

Accordingly, we will deny Defendants' Motion for Contempt and Sanctions as against Plaintiff Domiano. **(Doc. 118)**. Each party will bear their own costs and attorneys' fees.[2]

**SO ORDERED.**

**THOMAS M. BLEWITT**
**United States Magistrate Judge**

Dated: January 27, 2009

---

[2] Due to the frequency of the contempt motions filed by Plaintiff and Defendants against each other, which have been found to be without merit, and due to the contentious litigation history between the parties, the Court directs each party to pay their own costs and fees.